THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| RANDALL THOMAS NAVES,<br><br>Plaintiff,<br><br>v.<br><br>KELLY SPARKS et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND DISMISSAL ORDER**<br><br>Case No. 1:22-cv-00046-JNP<br><br>Chief District Judge Jill N. Parrish |

As a state prisoner held by Utah Department of Corrections, plaintiff Randall Thomas Naves filed this *pro se* civil-rights action. *See* 42 U.S.C.S. § 1983 (2026).[1]

After screening plaintiff's original complaint, raising legal-access claims against several Davis County defendants, the court concluded plaintiff failed to state a claim upon which relief may be granted and ordered him to show cause why this action should not be dismissed. Dkt. No. 20. When plaintiff did not respond, this action was dismissed. Dkt. No. 21. Plaintiff then successfully moved the court to vacate its dismissal order and allow him another chance to respond. Dkt. Nos. 20–21, 23–24. Plaintiff now replies with reasons why he could not earlier respond to the

[1] The federal statute creating a "civil action for deprivation of rights" reads, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.S. § 1983 (2026).

order to show cause and asks for leave to amend the Complaint. Dkt. Nos. 7, 20, 26. Good cause appearing, the court grants plaintiff's motion to amend. Dkt. No. 26.

The amended complaint retains some of the original complaint's flaws, but also adds other claims. Dkt. Nos. 7, 20, 27. The amended complaint keeps the same Davis County defendants: Sheriff Kelly Sparks, Sergeant Hutchinson, Deputy Skeen, and "John/Jane Does 1-4,"[2] all sued "in their official and individual capacities." Dkt. No. 27. Plaintiff also possibly adds Davis County Jail as a defendant. *Id.* The amended complaint lists ten "counts" alleging federal constitutional violations during plaintiff's time in Davis County Jail, from November 1 to 17, 2021, and requests injunctive relief and punitive damages. *Id.* at 5.

Having now screened and liberally construed[3] the amended complaint under its statutory review function,[4] the court dismisses this action for failure to state a claim upon which relief may be granted.

---

[2] The amended complaint makes no allegations involving Jane or John Does Three or Four, who are thus not considered further. Dkt. No. 27.

[3] The Court recognizes plaintiff's *pro se* status, and so construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Still, such liberal reading is meant merely to overlook technical formatting errors and other similar defects in plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not excuse plaintiff from the duty to meet various rules and procedures directing litigants and counsel or the mandates of substantive law; regarding these, the Court will treat plaintiff with the same standards applicable to counsel licensed to practice law before this Court's bar. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[4] The screening statute reads:

> (a) Screening.--The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.S. § 1915A (2026).

## I. FAILURE TO STATE A CLAIM

### A. *Standard of Review for* Sua Sponte *Dismissals*

Assessing a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when—though the facts are viewed in the plaintiff's favor—the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554–55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). "[T]he complaint must contain something more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Eaves v. Kory*, No. 24-1048, 2024 U.S. App. LEXIS 12964, at *2–3 (10th Cir. May 30, 2024) (unpublished) (quoting *Iqbal*, 556 U.S. at 678). Also, "[f]acts, not conclusions, must be pleaded— 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S.

Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

As the Court reviews the sufficiency of plaintiff's allegations, it painstakingly does so per individual defendant, per cause of action. *See Williams v. Utah Dep't of Corr.*, 928 F. 3d 1209, 1212 (10th Cir. 2019) (stating plaintiff must "explain[] which . . . prison-official defendants are liable for what improper conduct"). Indeed, § 1983 cases often include a list of defendants, like

> the government agency and a number of government actors sued in their individual capacities. . . . [I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins*, 519 F.3d at 1249–50 (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10). When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the plaintiff has not carried the burden of providing "adequate notice as to the nature of the claims against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

The following sections analyze and dismiss each of plaintiff's claims. Any facts stated are taken from the amended complaint's allegations and viewed in a light most favorable to plaintiff. They are taken as true for this order only.

B. *Factual Allegations*

Taken from the amended complaint, Dkt. No. 27: On November 1, 2021, together with his property, plaintiff was booked into Davis County Jail. Defendant Jane Doe, who was working in the booking area, told plaintiff that "his clock radio, antenna cable, headphone extension, and nail

clippers would not be allowed in the[] facility." Plaintiff decided to "consign[] these items to 'donation,'" maintaining the belief that "he was robbed of those items." Meanwhile, Jane Doe and two John Doe defendants (the Doe defendants) searched his property, consisting of paperwork (two-thirds of it "considered public or privileged legal materials) that was divided into three separate "marked pouches." After the property was searched, plaintiff was placed in "housing" without his legal and religious materials, sweats, bowl, and hygiene items. Plaintiff's "notification of change of address," meant for this court, was part of plaintiff's inaccessible property. "Plaintiff was denied access to his religious materials during his entire [seventeen-day] stay at" Davis County Jail. On November 17, 2021, plaintiff was transferred to Utah State Prison. Plaintiff was then able to send the Court the change-of-address notification.

C. *Injunctive Relief*

The amended complaint asks for some injunctive relief. *Id.* at 5. However, plaintiff initially filed this case from Utah State Prison against Davis County defendants, alleging claims arising during his past stay in Davis County Jail. Dkt. No. 7. And he recently notified the Court of his move to Duchesne County Jail. Dkt. No. 45. "An inmate's transfer from a prison facility generally moots claims for . . . injunctive relief related to conditions of confinement." *Mitchell v. Estrada*, 225 F. App'x 737, 741 (10th Cir. 2007) (unpublished). Thus, plaintiff's requests for injunctive relief are denied as moot.

D. *Defendant Davis County Jail*

Plaintiff improperly names Davis County Jail as a § 1983 defendant, when it is not an independent legal entity that can sue or be sued. *See Smith v. Lawton Corr. Facility*, No. CIV-18-

110-C, 2018 U.S. Dist. LEXIS 45488, at *5 (W.D. Okla. Mar. 7, 2018) (stating correctional facilities "not suable entities in a § 1983 action"). Davis County Jail is thus dismissed.[5]

E. *Unlawful Seizure of Property*

Plaintiff alleges that, when he was transferred into Davis County Jail on November 1, 2021, the Doe defendants received the property he brought with him from his last facility. Dkt. No. 27, at 2. Jane Doe told plaintiff "that his clock radio, antenna cable, headphone extension, and nail clippers would not be allowed in the[] facility." *Id.* Plaintiff figured it would cost him some money to ship the items to a family member, so he "consigned these items to 'donation.'" *Id.* The Doe defendants then searched plaintiff's property, placing items in categorized pouches. *Id.*

Plaintiff asserts the Doe defendants' actions violated "the Fourth Amendment, unlawful seizure of property." *Id.* at 3. He argues,

> There was no penological or security reason for Defendants Jane Doe, John Doe # 1, nor John Doe # 2, to seize and hold the plaintiff's privileged legal, public legal, religious and other materials, especially in light of [Davis County Jail] having posted that these items were authorized for state inmates to have in their possession.

*Id.*

Plaintiff also asserts that certain limited communications (about his property and the Doe defendants) from defendants Hutchinson, Skeen, and Sparks "aided and abetted" the Doe defendants' Fourth Amendment violation. Dkt. No. 27, at 3–4. Plaintiff finally asserts that Davis

---

[5] Plaintiff made the following allegation that does not name an individual defendant but does mention Davis County Jail:

> When the plaintiff broached the subject of religious meals with Davis County Jail religious program people via tablet, they were clueless and had to ask the plaintiff what those entailed. Davis County Jail has been housing state inmates for years. There should have been no reason for the plaintiff to have to tell the religious program people to contact the prison for guidance. RLUIPA has been in place for years. Perhaps Davis County Jail is unaware of this.

Dkt. No. 27, at 4. This allegation does not say that plaintiff was ultimately deprived of anything (e.g., religious meals). It is therefore not considered further and dismissed. Additionally, the court notes that RLUIPA stands for Religious Land Use and Institutionalized Persons Act of 2000. 42 U.S.C.S. §§ 2000cc to 2000cc-5 (2026).

County violated his Fourth Amendment rights against "unlawful seizure of property" by having a policy of seizing and retaining inmate property.[6] Dkt. No. 27, at 4.

But "prisoners are not protected under the Fourth Amendment from unreasonable searches of their prison cells or from the wrongful seizure of property contained in their cells because 'the Fourth Amendment does not establish a right to privacy in prisoners' cells.'" *Bridgeforth v. Ramsey*, No. 99-6179, 1999 U.S. App. LEXIS 28886, at *3 (10th Cir. Nov. 2, 1999) (unpublished) (quoting *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517, 522–30 (1984))). So, plaintiff's Fourth Amendment claim necessarily fails. *See id.*

F. *Freedom-of-Religion Violation*

Plaintiff asserts, "When defendants Jane Doe and John Does # 1 and # 2 seized and sent the plaintiff's religious materials, chiefly his 'Book of Shadows,' they interfered with the plaintiff's freedom of religion," violating the First Amendment. Dkt. No. 27, at 3. This is because (as a Wiccan) plaintiff "celebrate[s] various phases of the moon," information contained in his missing "'Book of Shadows,' which is akin to a prayer book or even religious encyclopedia." *Id.*

Plaintiff also asserts defendant Hutchinson violated the First Amendment because, "as

---

[6] Plaintiff purports to sue each defendant in his or her official capacity. Dkt. No. 27, at 1. The United States Court of Appeals for the Tenth Circuit explains:

> The Supreme Court has instructed that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (cleaned up). By contrast, individual-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

*Coates v. Reigenborn*, Nos. 22-1339 & 22-1434, 2023 U.S. App. LEXIS 27456, at *9–10 (10th Cir. Oct. 16, 2023) (unpublished); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (stating "there is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* local government units can be sued directly for damages and injunctive or declaratory relief" (citing *Monell v. Dept' of Soc. Servs.*, 436 U.S. 658, 658 (1978)); *Mocek v. City of Albuquerque*, 813 F.3d 912, 932 (10th Cir. 2015) ("A suit against a government agent in his official capacity is treated as a suit against the government.").

Plaintiff's official-capacity claims against individual defendants are thus construed to be against Davis County itself.

watch commander," he "had the power to release . . . plaintiff's . . . religious materials" yet "fail[ed] to act." Dkt. No. 27, at 4.

Plaintiff finally asserts defendant Skeen violated the First Amendment by "interfer[ing] with the plaintiff's ability to practice his religion," when Skeen gave plaintiff his book, "Wicca, A Guide for the Solitary Practitioner," but "failed to provide . . . his copy of . . . 'A Good Witches Bible'" and "Book of Shadows." Dkt. No. 27, at 4.

1) Legal tenets

The Free Exercise Clause states, "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. The clause keeps government from regulating religious belief and conduct and applies to the states via the Fourteenth Amendment's Due Process Clause. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

The Supreme Court's free-exercise precedent mainly tackles laws burdening religious exercise. *Ashaheed v. Currington*, 7 F.4th 1236, 1243 (10th Cir. 2021). However, this case does not involve a law burdening religion but instead individual Davis County employees allegedly keeping plaintiff from his religious materials. It is thus about executive action, to which "the First Amendment applies . . . no less than it does to the passage of legislation." *Id.* (quoting *Shrum v. City of Coweta*, 449 F.3d 1132, 1140 (10th Cir. 2006)). And "executive action 'motivated by [the plaintiff's] religious commitments' is 'not neutral' and is 'a violation of his clearly established constitutional rights under the Free Exercise Clause,' even if not 'motivated by overt religious hostility or prejudice' or 'animus.'" *Id.* at 1244 (quoting *Shrum*, 449 F.3d at 1144–45 (citation modified)).

The Supreme Court holds, "Where the claim is invidious discrimination in contravention of the First . . . Amendment[], our decisions make clear that the plaintiff must plead and prove that

the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676 (citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 540–541 (1993) (plurality op. of Kennedy, J.)). "[P]urposeful discrimination . . . involves a decisionmaker's undertaking a course of action '"because of," not merely "in spite of," [the action's] adverse effects upon an identifiable group.'" *Id.* at 676–77 (alteration in original) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Ralston v. Cannon*, No. 19-1146, 2021 U.S. App. LEXIS 23544, at *13–14 (10th Cir. Aug. 9, 2021) (explaining, after *Iqbal*, prior court panel concluded "it was doubtful in our circuit whether having anything short of a discriminatory purpose would be sufficient to expose a defendant to § 1983 liability for a First Amendment free-exercise violation").

So, to plausibly assert a religious discrimination claim here, plaintiff "must plead sufficient factual matter to show that" defendants took his religious materials "not for a neutral . . . reason but for the purpose of discriminating on account of . . . religion." *Iqbal*, 556 U.S. at 677; *see also Pahls v. Thomas*, 718 F.3d 1210, 1230 n.8 (10th Cir. 2013) ("[W]here liability is to be imposed upon an individual defendant for discrimination in violation of the First Amendment, a plaintiff must prove a discriminatory purpose, supported by evidence of the defendant's subjective motivations.").

2) Application of law to facts

The amended complaint does not allege that the Doe defendants, Hutchinson, or Skeen "acted with discriminatory purpose." *Carr v. Zwally*, 760 F. App'x 550, 554–55 (10th Cir. 2019) (unpublished). It simply asserts that the Doe defendants "interfered with the plaintiff's freedom of religion," when they "seized and sent the plaintiff's religious materials"; Hutchinson "had the power to release . . . plaintiff's . . . religious materials" yet "fail[ed] to act"; and Skeen gave plaintiff one of his religious books but not two others. Dkt. No. 27, at 3–4. The amended complaint contains

no allegations about defendants' purposes in seizing, failing to release, and holding back some of plaintiff's religious materials.

Though plaintiff is silent on defendants' purposes here, the plaintiff in *Carr* went so far as to allege that the defendant jail employee who removed his religious materials "acted 'knowingly,' 'oppressively,' 'abusively,' 'purposely,' and 'vindictively' in removing the property." *Carr*, 760 F. App'x at 555. Still, the Tenth Circuit concluded that "nothing in the complaint provides 'sufficient factual matter to show that' [the defendant] took Mr. Carr's Bibles and religious materials 'not for a neutral . . . reason but for *the purpose of* discriminating on account of . . . religion.'" *Id.* (quoting *Iqbal*, 556 U.S. at 677 (emphasis added)).

And, like *Carr*, plaintiff's allegations here "are to the contrary" of discriminatory purpose. *Id.* For instance, the *Carr* plaintiff "allege[d] the religious items were taken alongside other non-religious material; he d[id] not allege that the religious materials themselves were targeted." *Id.* Likewise, here, plaintiff was allegedly placed in housing without his religious books, but also without his legal materials, sweats, bowl, and hygiene items. Dkt. No. 27, at 2. Plaintiff was even given one of his religious books. *Id.* at 4. Meanwhile, in *Carr*, the complaint "at most suggested [the defendant] removed the property out of a personal animus" because it "never connect[ed]" the defendant's behavior "to anything about [the plaintiff's] religion." *Carr*, 760 F. App'x at 555. But the amended complaint's allegations are even more tenuous, in that they do not suggest animus of any kind accompanied defendants' deprival of plaintiff's religious materials.

A Tenth Circuit panel and other courts have declined to find First Amendment violations on similar facts. *See, e.g.*, *Peterson v. Lampert*, 499 F. App'x 782, 783, 785 (10th Cir. 2012) (unpublished) (holding negligent "alleged loss of certain religious personal property" did not support free-exercise claim); *O'Banion v. Anderson*, 50 F. App'x 775, 776–77 (7th Cir. 2002)

(unpublished) (holding inmate could not validly plead free-exercise claim based on destruction of religious furs and feathers "without alleging that his religious observance was unreasonably restricted, or that prison authorities destroyed the items because of their religious nature, or as discrimination against his particular religion" (citations omitted)); *Shidler v. Moore*, 409 F. Supp. 2d 1060, 1069–70 (N.D. Ind. 2006) (dismissing free-exercise claim based on confiscation of religious mail because prisoner additionally alleged he was being denied all mail addressed to "any name other than his incarceration name," undermining any "allegation of an intent to deprive [the prisoner] of access to religious property").

In short, the amended complaint wholly fails to allege that defendants Jane Doe, John Doe One, John Doe Two, Hutchinson, and Skeen acted "because of" an effect on plaintiff's religion; thus, his free-exercise claim is nonviable and dismissed. *See Carr*, 760 F. App'x at 555.

G. *Religious Land Use and Institutionalized Persons Act Violation*

Plaintiff contends that the same actions—by the Doe defendants and Skeen—that violated his freedom of religion also violated the Religious Land Use and Institutionalized Persons Act of 2000. Dkt. No. 27, at 3. However, claims under the Act are "limited to official capacity claims for equitable relief." *Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (citing *Sossamon v. Texas*, 563 U.S. 277, 280 (2011)). And, as discussed above, a transfer between correctional institutions moots claims for injunctive relief at the former institution. *See Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010).

Again, on November 17, 2021, plaintiff was transferred from Davis County Jail to Utah State Prison. Dkt. No. 27, at 2. And he recently notified the Court of his change of address to Duchesne County Jail. Dkt. No. 45. Plaintiff's Religious Land Use and Institutionalized Persons

Act claims involving Davis County defendants are thus moot. *See Warner v. Patterson*, 534 F. App'x 785, 788 (10th Cir. 2013) (unpublished) (concluding that plaintiff's departure from custody mooted claims under the Act).

H. *Interference with Legal Access*

Plaintiff argues that the Doe defendants' placement of his legal materials in Davis County Jail's property room "forced the plaintiff to be in contempt of court, by not complying with the court's directive to keep them informed of his address." Dkt. No. 27, at 3.

These allegations do not cure plaintiff's legal-access claim as found in his original complaint and already deemed fatally lacking in the order to show cause as follows:

> Plaintiff's allegations fall short as to the requirement that he must allege the defendants' behavior "prejudiced" him in pursuing "a nonfrivolous claim" in a "habeas corpus or civil rights action[] regarding current confinement." *See Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). Plaintiff's relevant allegations are as follows. From November 1 to 17, 2021, Plaintiff was housed at [Davis County] Jail. ECF No. 7, at 3. During that time, he was deprived for a period of his legal paperwork, causing him to delay informing this court of his change-of-address in a different case. *Id.* at 4 (referring to *Naves v. Uintah Cnty. Jail*, No. 4:20-CV-115). When he did get back his legal materials, they were haphazardly arranged. *Id.* at 5-6. His return to Utah State Prison on November 17 necessitated him filing a second change-of-address. *Id.* at 6. His request to Defendant Sparks for names of the defendants in this case was not answered properly. *Id.* Plaintiff contends that these circumstances led to a seventeen-day delay in his notification to this Court of his location and ability to send information requests to several institutions. *Id.* at 7. Another alleged upshot of this is that a conditions-of-confinement case that "should have been filed in mid-December 2021 was submitted to the court in early February 2022." *Id.*
>
> Plaintiff does not acknowledge crucial details fatal to his attempt to state a cause of action: He never even hints that he was prejudiced by this seventeen-day period during which he did not always have access to his legal materials. Indeed, a review of the Court's dockets reveals that the filing of Plaintiff's notice of change-of-address in Case No. 4:20-CV-115 on November 29, 2021 was uneventful. *Naves*, No. 4:20-CV-115-DN, ECF No. 35. Dismissal of that case, two months later, was completely unrelated to the timing of the filing of the change-of-address, and was instead based on Plaintiff's failure to state a claim upon which relief may be granted. *Id.* at ECF No. 36. The other case to which Plaintiff refers--filed in February 2022--appears to be *Naves v. Nielson*, 2:22-CV-131-DAK, though

> Plaintiff has not even suggested the alleged several-week delay in filing has prejudiced him in pursuing that ongoing litigation.
>
> Again, to adequately state a legal-access claim under the Federal Constitution, Plaintiff must assert the interruption to possession of his legal materials prejudiced him in pursuing nonfrivolous claims related to his confinement. *See Penrod*, 84 F.3d at 1403; *Carper*, 54 F.3d at 616. He has not alleged such prejudice, nor does it appear that he validly could. The Court thus proposes to dismiss this action.

Dkt. No. 20, at 4–5.

Plaintiff's legal-access claims against the Doe defendants are thus dismissed.

## II. ORDER

IT IS ORDERED as follows:

1. Plaintiff's motion to amend the complaint is GRANTED. Dkt. No. 26.

2. Plaintiff's amended complaint, Dkt. No. 27, is DISMISSED without prejudice. *See* 28 U.S.C.S. § 1915(e)(2)(B) (2026).

DATED September 22, 2026.

BY THE COURT:

Jill N. Parrish
Chief United States District Court Judge
District of Utah